Case 4:25-cv-04830   Document 23   Filed on 11/13/25 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas

**ENTERED**
November 13, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA MONTOYA CABANAS, | § § | CIVIL ACTION NO 4:25-cv-04830 |
| Petitioner, | § § § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § § | |
| PAMELA BONDI, *et al*, Respondents. | § § § | |

OPINION AND ORDER

Petitioner Virginia Montoya Cabanas is a citizen of Mexico who has lived in the United States without lawful permission for over twenty years. She was taken into custody by Immigration and Customs Enforcement in June 2025, where she currently remains. Respondents are sued in their official capacity as officers or employees of the United States and are collectively referred to as *the Government*.

Pending is a petition for a writ of *habeas corpus*, by which Petitioner challenges her detention without a bond hearing. Dkt 1. She asserts that she's entitled to such a hearing under 8 USC §1226(a), which provides for discretionary detention during removal proceedings.

Pending also is a motion by the Government for summary judgment. Dkt 8. It contends that no detention hearing is required, because Petitioner is an "applicant for admission" under 8 USC §1225(b)(2)(A), which provides for mandatory detention during removal proceedings.

The text of §1225(b)(2)(A) supports the Government's position. As such, its motion for summary judgment is

granted, and the petition for a writ of *habeas corpus* is denied.

1. Background

Petitioner Virginia Montoya Cabanas is a citizen of Mexico who has resided in the United States since April 2001. Dkt 1 at ¶¶42–43. Both she and her husband were detained by ICE after a traffic stop on June 6, 2025. Id at ¶48. Petitioner admitted to ICE Enforcement and Removal Operations that "she unlawfully entered the United States, that she did not possess or present any valid entry documents, and that she was not admitted or paroled into the United States." Dkt 8-1 at ¶4 (declaration of Deportation Officer Matthew Alexander).

Petitioner has no criminal history and no prior encounters with immigration officials or law enforcement. Dkt 1 at ¶¶43, 47. She and her husband were living in Claxton, Georgia, at the time of her arrest. Id at ¶42. She is now detained in Houston, Texas, and her husband is detained in Bakersfield, California. Id at ¶49. And she has three children who are US citizens, with the youngest being ten years old. Id at ¶44. The petition states that her continuing detention is "inflicting significant harm on her family." Id at ¶56. Her children are experiencing "deep emotional distress" and "depression." Ibid.

ICE charged Petitioner with removability pursuant to 8 USC §1182(a)(6)(A)(i) as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt 8-1 at ¶5. The Department of Homeland Security also instituted removal proceedings against Petitioner pursuant to 8 USC §1229(a). Dkt 1 at ¶57.

While in detention, Petitioner requested a bond hearing before the immigration court. Id at ¶51. The Government there argued that Petitioner wasn't eligible for a bond hearing because she was subject to mandatory detention under 8 USC §1225(b)(2)(A). Ibid. Although the immigration judge explicitly found that Petitioner was "not

a danger or flight risk," she then further determined that jurisdiction was lacking to redetermine custody, given reliance by the Government on §1225(b)(2)(A). See Dkt 8-2 (order of IJ). This itself followed from a recent *unpublished* ruling by the Board of Immigration Appeals, holding that an alien who entered without admission or parole, despite residing in the United States for a decade, was an "applicant for admission" subject to mandatory detention under 8 USC §1225(b)(2)(A). See Dkt 1 at ¶31 n 2. The BIA later issued a precedential decision to the same effect on September 5, 2025. See *Matter of Hurtado*, 29 I&N Decision 216 (BIA 2025).

Petitioner reserved her right to appeal the decision of the IJ to the BIA but then didn't do so. See Dkt 8-2 at 3 (order noting reservation of appeal). The deadline for appeal has now passed. Ibid.

Petitioner is currently detained at the Houston Processing Center. Dkt 1 at ¶49. She filed the subject petition for a writ of *habeas corpus* on October 9, 2025. See Dkt 1. She states causes of action for (i) violation of the INA, and (ii) violation of the Due Process Clause of the Fifth Amendment. Id at ¶¶59–65.

The Government was ordered to show cause. Dkt 3. It complied and also moved for summary judgment. Dkt 8.

### 2. Legal standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v Rumsfeld*, 542 US 507, 525 (2004). "A district court may grant a writ of *habeas corpus* if a petitioner is in federal custody in violation of the Constitution or federal law." *Buenrostro-Mendez v Bondi*, 2025 WL 2886346, *1 (SD Tex), citing 8 USC §2241 (internal citations omitted). "If a district court entertains a *habeas* petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief." Ibid, citing 28 USC § 2243 (emphasis added).

3. Analysis
    a. Exhaustion of remedies

As noted above, Petitioner preserved her right to appeal the IJ order but then didn't do so. The Government didn't initially raise the issue of exhaustion of administrative remedies. See Dkt 8. But given its jurisdictional import, the Government was directed to brief exhaustion at hearing in a similar case before the undersigned that presented the same statutory issue. See *Maceda Jimenez v Thompson et al*, 4:25-cv-05026, Dkt 6 (minute entry). The Government then briefed the issue in their supplemental filing in this case. See Dkt 14 at 7–9. Petitioner responded accordingly. See Dkt 18 at 15–19.

The Government contends that failure by the Petitioner to appeal the decision of the IJ to the BIA bars consideration of her petition here. Dkt 14 at 7–9. It cites in support *Fuller v Rich*, where the petitioner argued that administrative appeal was futile because the deadline for filing the appeal had passed. 11 F3d 61, 62 (5th Cir 1994). The Fifth Circuit disagreed, finding waiver of exhaustion not justified "until [the petitioner] actually appeals" because "we do not know what the appeals board will do with [petitioner's] claim, and until the appeals board has been given an opportunity to act, [petitioner] has not exhausted his administrative remedies." Ibid. With reference to *Matter of Hurtado*, 29 I&N Decision 216 (BIA 2025), the Government further argues that mere likelihood of the BIA to deny relief in reliance on that decision is insufficient to demonstrate futility. Dkt 14 at 8–9.

Petitioner maintains to the contrary that any exhaustion requirement should be waived because (i) the BIA doesn't have jurisdiction to adjudicate constitutional issues, (ii) appeal would be futile, and (iii) Petitioner is suffering irreparable harm while detained that would be compounded by delay. See Dkt 18 at 15–19.

It is well settled that a "person seeking *habeas* relief must first exhaust available administrative remedies." *Hinojosa v Horn*, 896 F3d 305, 314 (5th Cir 2018). But any

4

exhaustion requirement is prudential, as no statutory proscription is cited in this context. See *Covarrubias v Vergara*, 2025 WL 2950096, *6 (SD Tex). And the Fifth Circuit holds that exceptions to exhaustion are appropriate where the available administrative remedies are (i) unavailable, (ii) wholly inadequate, (iii) patently futile, or (iv) when a constitutional challenge is advanced that is unsuitable for determination in an administrative proceeding. See *Fuller,* 11 F3d at 62; *Garner v US Department of Labor*, 221 F3d 822, 825 (5th Cir 2000).

The IJ here issued a decision denying custody redetermination to Petitioner on jurisdictional grounds upon finding that Petitioner's detention was governed by 8 USC §1225(b)(2)(A). See Dkt 8-2 (order of IJ). Petitioner plainly had a right to appeal that determination to the BIA. See 8 CFR 1236.1(d)(3). Her failure to pursue an available appeal does suggest a failure to exhaust an available administrative remedy.

Complicating that course of action, however, is the July 2025 joint policy decision by the Departments of Justice and Homeland Security to apply §1225(b)(2)(A) to all "applicants for admission," including individuals like Montoya. See Dkt 18 at 18 n 2. Petitioner argues that appeal to BIA would have been futile because the BIA operates under DOJ authority. See id at 18, citing 8 CFR §1003.1. She further argues that the BIA issued a nonprecedential decision in May 2025 applying the Government's interpretation of §1225(b)(2)(A), further suggesting futility. See Dkt 18 at 18 n 3. And this was confirmed shortly thereafter in the BIA's precedential decision in *Matter of Hurtado*, 29 I&N Decision 216 (BIA 2025), which addressed the statutory construction dispute at issue here. In sum, it held that, regardless of length of time in the United States, immigration judges lack authority to grant bond to aliens present in the United States without admission under §1225(b)(2)(A).

The *Hurtado* decision issued on September 5, 2025. Nothing in the record suggests that the BIA would reconsider that reasoned decision, given its recency. And

5

even if Petitioner had pressed an appeal to the BIA, it doesn't appear that such decision would be available for appeal directly to the Fifth Circuit. See 8 USC §1252(a)(1) (limiting jurisdiction of courts of appeals to review of final orders of removal). As well, it must be recognized that Petitioner here challenges her detention on constitutional grounds. See Dkt 1 at ¶¶62–65 (asserting violation of right to due process). Such challenge falls outside the jurisdiction of the BIA. *Falek v Gonzales*, 475 F3d 285, 291 n 4 (5th Cir 2007) (explaining "there is no dispute that the BIA has no power to adjudicate constitutional claims").

As such, failure to appeal in these circumstances shouldn't be counted as an impermissible failure to exhaust administrative remedies. Consideration of the merits is thus proper.

b. Applicability of §1225(b)(2)(A) or §1226(a)

The parties primarily dispute the appropriate statute by which to measure the permissibility of Petitioner's detention pending otherwise valid removal proceedings. The Government seeks to enforce 8 USC §1225(b)(2)(A). Petitioner favors 8 USC §1226(a). As always, "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v United States*, 541 US 176, 183 (2004).

Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States. Section 1225(a)(1) quite broadly defines which aliens are "applicants for admission," stating with emphasis:

> An alien *present in the United States who has not been admitted* or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an *applicant for admission*.

6

Section 1225(b)(2)(A) then prescribes specific detention requirements, stating with emphasis added:

> [A]n alien who is an *applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, *the alien shall be detained* for a proceeding under section 1229a of this title.

The parties agree that this statute, if applicable, requires *mandatory detention*. See Dkts 1 at ¶60 & 8 at 1.

On the other hand, §1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole; but
> >
> > (3) may not provide the alien with work authorization . . . .

The parties agree that this statute, if applicable, permits *discretionary detention*. See Dkts 8 at 5 & 18 at 1. The Supreme Court observes, "Federal regulations provide that aliens detained under §1226(a) receive bond hearings at the outset of detention." *Jennings v Rodriguez*, 583 US 281, 306 (2018), citing 8 CFR §§ 236.1(d)(1), 1236.1(d)(1).

The Government maintains that Petitioner is subject to mandatory detention under §1225(b)(2)(A). In its view,

7

she is an "applicant for admission" for the very reason that she is an alien "present in the United States who has not been admitted." Dkt 8 at 6. And under the plain text of the §1225(b)(2)(A), such individuals "shall be detained" without bond. Id at 7–9.

Petitioner argues instead that she is entitled to the bond hearing attendant to discretionary detention under §1226(a). In doing so, she concedes that she is an "applicant for admission" under the statute. Dkt 18 at 12. But she disputes that she was *seeking admission,* given her decades-long residence in the United States. Dkt 1 at ¶41. She further argues that her petition requesting construction in favor of §1226(a) finds support in legislative history, statutory structure, longstanding ICE practice, and what she describes as "judicial consensus" of district courts. See Dkts 1 at ¶¶ 21–41 (petition) & 18 at 2–15.

Simply put, the statutory text of §1225(b)(2)(A) governs in this case. Adopted in such conclusion is the reasoning of Judge James Wesley Hendrix in *Rene Garibay-Robledo v Kristi Noem*, et al, 1:25-cv-00177-H (ND Tex 2025). The statutory definition of *applicant for admission* is broad and, indeed, so broad that Petitioner doesn't dispute that she is such a person. See Dkt 18 at 12. That factual determination itself resolves the question as to whether §1225(b)(2)(A) applies. For example, see *Digital Realty Trust, Inc v Somers*, 583 US 149, 160 (2018), quoting *Burgess v United States*, 553 US 124, 130 (2008): "When a statute includes an explicit definition, [courts] must follow that definition, even if it varies from a term's ordinary meaning."

Attempts by Petitioner to distinguish an *applicant for admission* from an alien *seeking admission* are unavailing.

*First,* as Judge Hendrix observed, there is "no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Garibay-Robledo*, 1:25-cv-00177-H at 8–9. That Petitioner has resided in the United States without valid permission for years thus doesn't render §1225(b)(2)(A) inapplicable.

*Second,* there isn't a separate concept applicable to an "arriving alien" as distinct from an "applicant for admission." Petitioner points to regulatory language that an "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States." Dkt 18 at 13, quoting 8 CFR 1.2. Put differently, she says, an arriving alien is an *applicant* who is *doing something,* such as *seeking admission* under §1225(b)(2)(A). Dkt 18 at 13; for example, see *Martinez v Hyde,* 2025 WL 2084238, *6 (D Mass) (holding §1225(b) inapplicable upon finding *applicant seeking admission* roughly interchangeable with *arriving alien*). The problem with the argument, however, is that Congress could have said that §1225(b) applied only to *arriving aliens* if that's what was meant. But it didn't, even as three other closely related subsections did. See §1225(a)(2) ("arriving alien who is a stowaway" isn't eligible to apply for admission); §1225(c)(1) (referring to situation where immigration officer or immigration judge "suspects that an arriving alien may be admissible"); §1225(d)(2) (titled with respect to authority "to order detention and delivery of arriving aliens"). Congress chose *not* to use "arriving alien" in §1225(b)(2)(A). As such, it simply cannot be said to be limited to aliens arriving at the border.

*Third,* legislative history certainly cannot provide reason to depart from clear statutory text. Petitioner seeks by this to argue that the structure and legislative history of §1225(b) limits its applicability to ports of entry. Dkt 18 at 3. She cites a conference report that putatively states, "§302 'revises section 235 of the INA to consolidate the inspection and removal process at ports of entry." Ibid. Upon close check, for whatever reason, no such quote appears to exist in the cited conference report. Regardless, upon finding that the text of a statute is unambiguous, consideration of legislative history is inappropriate. See *United States v Kaluza,* 780 F3d 647, 658 (5th Cir 2015), citing *Carrieri v Jobs.com Inc,* 393 F3d 508, 518–19 (5th Cir 2004).

*Fourth,* it must be recognized that a great many decisions in the district courts agree with the position of Petitioner. In one of her filings, she collects thirty citations. See Dkt 10 at 2–3. In another, she focuses on five for emphasis. See Dkt 18 at 2, citing *Martinez v Hyde*, 2025 WL 2084238 (D Mass); *Lopez-Arevelo v Ripa*, 2025 WL 2691828 (WD Tex); *Buenrostro-Mendez v Bondi*, 2025 WL 2886346 (SD Tex); *Covarrubia v Vergara*, 2025 WL 2950097 (SD Tex); *Alvarez Puga v Assistant Field Office Director, Krome North Service Processing Center, et al*, 2025 WL 2938369 (SD Fla). But others have decided to the contrary, in addition to Judge Hendrix in *Garibay-Robledo* and the BIA in *Hurtado*. For example, see Dkts 16, 20 & 21, collectively citing *Vargas Lopez v Trump*, 2025 WL 2780351 (D Neb), *Chavez v Noem*, 2025 WL 2730228 (SD Cal), *Sandoval v Acuna*, 2025 WL 3048926 (WD La), and *Olalde v Noem*, 2025 WL 3131942 (ED Mo). Until such time as the Fifth Circuit takes up this issue and gives an authoritative construction, it remains incumbent upon district courts to each make their own, independent assessment.

*And last,* amendment to §1226 by the recent Laken Riley Act doesn't imply that §1225(b)(2)(A) should be read contrary to its clear terms. This amendment was enacted in January 2025 and requires mandatory detention for aliens who are inadmissible *and* have been arrested for, charged with, or convicted of certain crimes. See 8 USC §1226(c)(1)(E)(i)–(ii). Petitioner herself doesn't appear to raise contention in this regard. But many of the authorities cited above in part conclude that, if Congress intended for §1225(b)(2)(A) to govern *all* inadmissible aliens, then this recent amendment is superfluous to the extent that it prescribes mandatory detention within §1226 as to only *certain* criminal inadmissible aliens. For example, see *Alvarez Puga*, 2025 WL 2938369 at *5.

Such conclusion isn't warranted. It's undisputed that prior Administrations for decades applied §1226(a) to individuals like Petitioner, thus declining to exercise the full extent of executive authority available under the INA.

See Dkt 1 at ¶28. As noted, Congress enacted the Laken Riley Act in January 2025, well prior to DHS under the present Administration issuing guidance clarifying that "section 235 of the [INA], rather than section 236"—that is, §1225, rather than §1226—"is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Document No 25071607, American Immigration Lawyers Association (July 8, 2025).

"When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Peavy v WFAA-TV, Inc*, 221 F3d 158, 169 (5th Cir 2000), quoting *Stone v INS*, 513 US 386, 397 (1995). Here, at the time of enactment, the Laken Riley Act *did* have such effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it—under either §1225 or §1226—by longstanding practice of prior Administrations. But this means only that Congress determined to narrow aspects of the discretion available to any Administration prioritizing removal proceedings toward §1226. It doesn't follow that the Laken Riley Act undercuts the more fulsome, executive authority that Congress provided to exist independently under the text of §1225(b)(2)(A).

Simply put, amendment by the recent Laken Riley Act to §1226 isn't superfluous. Beyond that, and regardless, the Supreme Court holds, "Redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v Burr*, 590 US 222, 239 (2020). As noted by Judge Hendrix in *Garibay-Robledo*, "the canons of statutory construction should only be used to resolve remaining ambiguity, not to inject it where it does not exist." 1:25-cv-00177-H at 9 (internal quotations omitted). The text being clear, it is appropriately applied as written.

As summarized at the outset, the personal and family circumstances of Petitioner are no doubt sympathetic. But §1225(b)(2)(A) by its terms applies to her and supports the

position of the Government as to mandatory detention. Inquiry beyond that, as to whether such position is the best or wisest use of executive enforcement priorities, or whether it is in line with the priorities of prior Administrations, simply isn't the remit of an Article III court. It is instead the subject of legislation and the result of elections, both of which have consequences.

### c. Putative violation of due process

The claim by Petitioner for violation of her right to due process briefly alleges, "The government's detention of [her] without a bond redetermination hearing to determine whether [s]he is a flight risk or danger to others violates her right to due process." Dkt 1 at ¶65. No other briefing of a constitutional dimension appears in her other filings. See Dkts 5, 10, 11, 18 & 19.

This assertion appears to present nothing beyond the larger contention as to the relevant and applicable statute to apply. That has been resolved above. And no assertion is made that the application of 8 USC §1225(b)(2)(A) is itself unconstitutional, if determined to be the correct statute.

It should be noted that the undersigned inquired at hearing as to the requirement within §1225(b)(2)(A) that an "examining immigration officer" determine that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." The Government was directed to identify who that particular officer was in this case, while also explaining more generally the duties of that officer. See Dkt 13 (minute entry). This was intended to ensure that Petitioner had received the process to which she was entitled even under §1225(b)(2)(A).

The Government subsequently explained that the INA defines "immigration officer" as "any employee or class of employees of the [INS] or of the United States designated by the Attorney General . . . to perform the functions of an immigration officer." Dkt 14 at 2–3, citing 8 USC §1101(a)(18). Implementing regulations further define an "immigration officer" to include "deportation officers." See 8 CFR § 1.2. The Government thus contends that the

supervisory deportation officer who gathered information about Petitioner after her arrest and determined that she wasn't admissible qualifies as the "examining immigration officer." Dkt 14 at 3. It also provides proof as to the identity of such officer and performance of such duty. See Dkt 15 at 1 (sealed supplemental brief).

Petitioner argues to the contrary that the "examining immigration officer" referenced in §1225(b)(2)(A) is limited to Customs and Border Protection officers conducting "face-to-face assessment of an applicant for admission at a port of entry." Dkt 18 at 7. But the statutory text, regulations, and relevant authority don't impose such a narrow meaning on the word "examine." And nothing by definition pertains to ports of entry alone. Petitioner observes that the ordinary dictionary meaning of the *examine* is to "inspect or investigate closely." Id at 15; see New Oxford American Dictionary (3rd edition 2010) (defining *examine* as to "investigate thoroughly"). But such definition doesn't suggest that an "examining immigration officer" excludes from its ambit a supervisory deportation officer charged with gathering information and making determinations regarding admissibility of an individual. The natural reading of the statute instead dictates the contrary.

In short, the Government provided the process to which Petitioner was due under §1225(b)(2)(A). As such, and as pleaded, the claim with respect to violation of due process fails.

### 4. Conclusion

It's noted that several abnormalities appear in the response by Petitioner to the supplemental brief of the Government. Dkt 18. For example, the brief states that the Government cited three cases that aren't actually cited. See id at 4–5. Substantive inaccuracies also exist in both quotations and characterizations of cited case law. See id at 3–4. This may be related to the use of artificial intelligence products. Whatever the cause, counsel is simply cautioned to ensure that all citations are checked and all arguments are properly supported prior to filing.

The petition for writ of *habeas corpus* by Petitioner Virginia Montoya Cabanas is DENIED. Dkt 1.

The motion for summary judgment by the Government is GRANTED. Dkt 8.

A final judgment will enter separately.

SO ORDERED.

Signed on November 13, 2025, at Houston, Texas.

_____
Hon Charles Eskridge
United States District Judge